T.C. Memo. 2017-121

UNITED STATES TAX COURT

VLADIMIR ROUDAKOV, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10141-16L.                              Filed June 20, 2017.

Vladimir Roudakov, pro se.

Gennady Zilberman, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, Judge:  In this collection due process (CDP) case, petitioner

seeks review pursuant to sections 6320(c) and 6330(d)(1) of the determination by

the Internal Revenue Service (IRS or respondent) to uphold the filing of a notice

**[\*2]** of Federal tax lien (NFTL).[1]  Petitioner's underlying tax liabilities for the years that are the subject of the NFTL were established by this Court's opinion in Roudakov v. Commissioner, T.C. Memo. 2014-193, and our decision in that case has become final within the meaning of section 7481.  In this CDP case now before us, we conclude that the settlement officer (SO) did not abuse her discretion in sustaining the collection action, and we will accordingly uphold her determination.

FINDINGS OF FACT

The parties submitted stipulations of fact with attached exhibits that are incorporated by this reference.  Petitioner resided in New York when he filed his petition.

In February 2003 petitioner was indicted in the U.S. District Court for the Eastern District of Pennsylvania on two counts of willfully subscribing to false Federal income tax returns, for 1996 and 1997, respectively.  See sec. 7206(1).  His first trial ended in a hung jury, but upon retrial the jury in February 2004 convicted him on both counts.  In September 2005 he was sentenced to 24 months'

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and except as otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

**[*3]** imprisonment, one year of supervised release, a $100 special assessment, and a $5,000 fine. The U.S. Court of Appeals for the Third Circuit in September 2007 affirmed his sentence. United States v. Roudakov, 239 F. App'x 776, 777 (3d Cir. 2007).

After completion of the criminal proceedings the IRS examined his returns for 1995, 1996, and 1997 and performed a bank deposits analysis. On the basis of that analysis the IRS sent petitioner a notice of deficiency in June 2011 that determined tax deficiencies and civil fraud penalties under section 6663(a) for his tax years 1995, 1996, and 1997. Petitioner timely petitioned this Court and, after a trial in September 2013, we redetermined those deficiencies and fraud penalties. Roudakov, 108 T.C.M. (CCH) at 321-323. On December 23, 2014, we issued a decision determining for 1995, 1996, and 1997, respectively, deficiencies of $8,239, $23,246, and $11,826 and fraud penalties of $6,179, $17,435, and $8,870. Petitioner did not appeal that decision, and it became final 90 days thereafter. See secs. 7481(a)(1), 7483.

The IRS assessed those amounts of redetermined deficiencies and penalties, along with applicable interest, on June 8, 2015. On June 23, 2015, petitioner submitted a proposed installment agreement to the IRS Collection Division, in which he offered to pay $80 per month toward satisfaction of his 1995-1997 liabilities,

[*4] which (including assessed interest) then exceeded $200,000. The IRS accepted this installment agreement but advised petitioner that it would file an NFTL to protect the Government's interest.

On August 20, 2015, the IRS sent petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing, and he timely requested a CDP hearing. The hearing was conducted through a series of telephone calls in March 2016. At the hearing petitioner challenged the entirety of his tax liability for 1995, sought abatement of interest and fraud penalties for 1996 and 1997, and requested withdrawal of the NFTL.

The SO concluded that petitioner could not challenge his underlying tax liabilities because they had been conclusively established by a final decision of this Court. She verified that the deficiencies and fraud penalties had been assessed consistently with this Court's decision. And she concluded that petitioner had provided no justification for abating any interest.

To support his request for withdrawal of the NFTL, petitioner asserted that he could lose his job if the NFTL remained in place. The SO invited him to submit evidence that the NFTL would damage his income-earning potential. When petitioner failed to submit any information to support his assertion about potential job loss, the SO closed the case.

**[\*5]**  On March 31, 2016, the IRS issued petitioner a notice of determination sustaining the collection action.  The notice determined that, notwithstanding approval of the installment agreement, the NFTL was necessary to protect the Government's interest in the event petitioner were to "sell assets or file bankruptcy."  Petitioner timely sought review in this Court.  See sec. 6330(d)(1).

OPINION

A.    Standard of Review

Although neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case, our case law tells us what standard to adopt.  Where the validity of a taxpayer's underlying tax liability is properly at issue, we review the IRS' determination de novo.  Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Where the taxpayer's underlying liability is not properly at issue, we review the IRS decision for abuse of discretion only.  Id. at 182.  Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law.  Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); see also Keller v. Commissioner, 568 F.3d 710, 716 (9th Cir. 2009), aff'g in part T.C. Memo. 2006-166.

**[\*6]**  Petitioner seeks to challenge his underlying tax liability for 1995 on the theory that he did not file a valid return for that year.  That contention is frivolous: Petitioner stipulated in the prior Tax Court case, and we found as a fact, that he had filed a valid return for 1995.  See Roudakov, 108 T.C.M. (CCH) at 320.  We take notice of that prior finding of fact under rule 201 of the Federal Rules of Evidence.

In any event, petitioner's contention is immaterial because our prior opinion, on becoming final, conclusively established his Federal income tax liability for each subject year.  That being so, section 6330(c)(2)(B) barred him from challenging, during the CDP process or in this Court, his underlying tax liability for any of those years.  See, e.g., Westby v. Commissioner, T.C. Memo. 2007-194, 94 T.C.M. (CCH) 71, 72 (concluding that, pursuant to section 6330(c)(2)(B), a taxpayer in a CDP case "is precluded from challenging the underlying tax deficiencies redetermined * * * in a prior Tax Court case").

More fundamentally, the general rule of res judicata precludes petitioner's challenge to his underlying tax liabilities for the subject years.  Under that rule, once we have "entered a final judgment on the merits of a cause of action, the parties * * * are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admis-

[*7] sible matter which might have been offered for that purpose.'" Commissioner v. Sunnen, 333 U.S. 591, 597 (1948) (quoting Cromwell v. County of Sac, 94 U.S. 351, 352 (1876)).

B.    Analysis

The only adjudicable question now before us is whether the IRS properly sustained the NFTL filing to facilitate collection of petitioner's unpaid 1995-1997 tax liabilities.  We thus review the record to determine whether the SO:  (1) properly verified that the requirements of applicable law or administrative procedure have been met; (2) considered any relevant issues petitioner raised; and (3) considered whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3).

Our review of the record establishes that the SO properly verified that the tax liabilities for the subject years had been properly assessed and that all requirements of applicable law and administrative procedure had been satisfied.  Petitioner raised two relevant issues at the CDP hearing:  a request for abatement of interest and a request that the NFTL be withdrawn.

Interest on tax liabilities arises automatically under section 6601, and the SO determined that the interest on petitioner's 1995-1997 tax liabilities had been

**[*8]** properly assessed. Section 6404(e)(1) authorizes the IRS to abate assessed interest that is attributable to "any unreasonable error or delay by an officer or employee of the [IRS] * * * in performing a ministerial or managerial act." A managerial act is "an administrative act * * * involving the temporary or permanent loss of records or * * * management of personnel." Sec. 301.6404-2(b)(1), Proced. & Admin. Regs. A ministerial act is a "procedural or mechanical act that does not involve the exercise of judgment or discretion." Id. subpara. (2). Actions relevant to "decision concerning the proper application of federal tax law" do not constitute "managerial" or "ministerial" acts. Id. subpara. (1) and (2); see, e.g., Sandberg v. Commissioner, T.C. Memo. 2011-72 (holding that the decision whether to subordinate a Federal tax lien is not a ministerial act); Hawksley v. Commissioner, T.C. Memo. 2000-354, 80 T.C.M. (CCH) 705, 711 (stating that a determination, whether or not correct, of Federal tax liabilities is not a ministerial act).

Petitioner did not identify, during the CDP process or in this Court, any unreasonable error or delay by any IRS officer or employee in performing any ministerial or managerial act. The gist of his argument is that many years have passed since he filed his 1995-1997 returns. He does not dispute the accuracy of the IRS'

**[\*9]** interest computation.[2] But he urges that abatement of interest is justified because the amount is so large.

The years that have passed since 1997 were consumed by the investigation of petitioner's tax crimes, the trial and appeal of his criminal case, the ensuing IRS examination, the Tax Court trial of his deficiency case, the ensuing IRS collection action, his pursuit of CDP relief, and the ensuing litigation in this Court. Each of these steps involved determining the proper application of Federal tax law to petitioner's facts. The mere passage of time, absent a showing of "unreasonable error or delay by an [IRS] officer or employee * * * in performing a ministerial or managerial act" under section 6404(e)(1)(A), is insufficient to justify abatement of interest pursuant to that provision. See, e.g., McGaughy v. Commissioner, T.C.

---

[2]Petitioner errs in asserting that the IRS breached its obligation to inform him of the interest rate to which he would be subject. Contrary to his view, the IRS is not a "financial institution" subject to laws regulating disclosure of interest rates. See, e.g., sec. 6311 (allowing payment of internal revenue taxes by "commercially acceptable means" but exempting IRS from requirements of the Truth in Lending Act, 15 U.S.C. sections 1601-1667, or any similar State law provisions). The interest rate that applies to underpayments of tax is adjusted quarterly and is publicly available. See sec. 6621(a)(2), (b) (establishing the underpayment interest rate as three percentage points above the Federal short-term rate, which the Secretary determines and publishes). The IRS publishes quarterly revenue rulings listing the applicable underpayment rate for each calendar quarter, going all the way back to the first quarter of 1987. And the notice of deficiency petitioner received set forth a detailed interest computation for each of the three tax years at issue in his deficiency case.

[*10] Memo. 2010-183 (construing section 6404(e)(1) to deny interest abatement for as long as a taxpayer is under criminal investigation or civil audit, regardless of the duration of those periods); Kemp v. Commissioner, T.C. Memo. 2004-139, 87 T.C.M. (CCH) 1406, 1408 (citing legislative history for the proposition that "Congress did not intend the abatement authority [under section 6404(e)(1)] to be used routinely to avoid payment of interest"); see also Taylor v. Commissioner, 113 T.C. 206, 213 (characterizing the IRS' decision to defer civil proceedings until resolution of the related criminal case as "[an] exercise of judgment * * * [and] not a ministerial act"), aff'd, 9 F. App'x 700 (9th Cir. 2001).[3]

Section 6323(j) authorizes the Secretary to withdraw an NFTL filing if he determines (among other things) that the taxpayer has entered into an installment agreement that renders the NFTL unnecessary or that withdrawal of the NFTL "will facilitate the collection of the tax liability." When accepting petitioner's in-

---

[3]Even if petitioner had identified some IRS error or delay in performing a managerial or ministerial act, he could not show that he would have paid his tax liabilities sooner but for that error or delay. The IRS accepted petitioner's installment agreement, which proposed to pay $80 per month toward liabilities in excess of $200,000, on the basis of his inability to pay his tax liability in full. Throughout the CDP process petitioner emphasized his inability to pay, not any act or omission by IRS personnel holding up payment. Even if we were to assume arguendo some IRS act or omission, by petitioner's own admission "no earlier payment would have been made." See Wright v. Commissioner, T.C. Memo. 2004-69, 87 T.C.M. (CCH) 1103, 1105. As a result, "no [interest] abatement is called for." Ibid.

[*11] stallment agreement the Collection Division informed him that an NFTL would be filed to protect the Government's interest. In this case, as in Blackman v. Commissioner, T.C. Memo. 2013-194, 106 T.C.M. (CCH) 160, 161, the SO "reasonably determined that it was appropriate to maintain the NFTL in order to allow collection of petitioner's tax liability in the event that he acquired additional assets or defaulted on the installment agreement."

Section 6323(j) "is permissive, and nothing in it requires respondent to withdraw the NFTL because of * * * [an] installment agreement." Berkery v. Commissioner, T.C. Memo. 2011-57, 101 T.C.M. (CCH) 1258, 1260; see sec. 301.6323(j)-1(c), Proced. & Admin. Regs. ("If the Commissioner determines conditions for withdrawal [of an NFTL] are present, the Commissioner may (but is not required to) authorize the withdrawal." (Emphasis added.)). The existence of the installment agreement, by itself, did not render the NFTL unnecessary. Given the circumstances here, the SO's decision to keep the NFTL in place was not an abuse of discretion.

Nor did the SO abuse her discretion in concluding that withdrawal of the NFTL would not "facilitate the collection of the tax liability." Although petitioner indicated his desire to have the NFTL withdrawn, he provided the SO with no financial or other information to support his assertion that the NFTL's filing could

[*12] cause him to lose his job or otherwise interfere with his future gainful employment. Because NFTL withdrawal is a collection alternative, see sec. 301.6320-1(e)(3), Q&A-E6, Proced. & Admin. Regs., petitioner was required to provide the SO with relevant information for her to consider in determining whether withdrawal of the NFTL might be warranted. He did not do so, despite her professed willingness to consider such information. As a result, petitioner did not properly raise this issue before the Appeals Office or this Court. See LG Kendrick, LLC v. Commissioner, 146 T.C. 17, 39 (2016), aff'd, __ F. App'x __, 2017 WL 1325249 (10th Cir. Apr. 11, 2017). Finding that the SO did not abuse her discretion in this or any other respect, we will sustain the collection action upholding the NFTL filing.

To reflect the foregoing,

Decision will be entered

for respondent.